## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMMUNITY IN-POWER AND DEVELOPMENT ASSOCIATION INC. 600 Austin Ave. Port Arthur, TX 77640; <br><br> HOOSIER ENVIRONMENTAL COUNCIL 3951 N. Meridian St., Suite 100 Indianapolis, IN 46208; <br><br> OHIO VALLEY ENVIRONMENTAL COALITION P.O. Box 6753 Huntington, WV 25773; <br><br> SIERRA CLUB 2101 Webster St., Suite 1300 Oakland, CA 94612; <br><br> and <br><br> UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT 423 W. 800 S., Suite A108 Salt Lake City, UT 84101, <br><br> *Plaintiffs*, <br><br> v. <br><br> GINA McCARTHY, Administrator, U.S. Environmental Protection Agency, in her official capacity, 1200 Pennsylvania Ave., NW Washington, DC 20460, <br><br> *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.      This is a suit to compel the Administrator of the United States Environmental Protection Agency ("EPA") to take actions mandated by the Clean Air Act, 42 U.S.C. §§ 7401-7671q ("the Act") to protect public health and the environment from major industrial sources of highly toxic air pollutants.  The Act requires the Administrator to "review, and revise as necessary (taking into account developments in practices, processes, and control technologies)" the emission standards for hazardous air pollutants promulgated under § 7412(d) no later than eight years after such standards are initially promulgated.  *Id.* § 7412(d)(6).  In addition, eight years after promulgating § 7412(d) standards, the Administrator either must promulgate additional "residual risk" standards under § 7412(f)(2), due to the risk remaining after the application of the § 7412(d) standards, or must determine that residual risk standards are not required to protect human health or the environment.  *Id.* § 7412(f)(2).  Yet the Administrator has missed the statutory deadlines to complete the required regulatory duties for the 9 categories of sources of toxic air pollution that are the subject of this complaint.  The Administrator has not taken the actions required by § 7412(d)(6) and § 7412(f)(2) for each of the categories of sources of hazardous air pollutants enumerated in Table A, below (column entitled "Source Category") (collectively, the "Source Categories"):

| Table A:  Source Categories Covered By This Complaint | | |
|---|---|---|
| **Source Category** | **Date Of Promulgation** | **Deadline For Action Pursuant To § 7412(d)(6) And § 7412(f)(2)** |
| 1.   Primary Copper Smelting, 67 Fed. Reg. 40,478 (codified at 40 C.F.R. Part 63 Subpart QQQ) | June 12, 2002 | June 12, 2010 |

| Table A:  Source Categories Covered By This Complaint | | |
|---|---|---|
| **Source Category** | **Date Of Promulgation** | **Deadline For Action Pursuant To § 7412(d)(6) And § 7412(f)(2)** |
| 2.  Generic MACT II – Carbon Black Production, 67 Fed. Reg. 46,258 (codified at 40 C.F.R. Part 63 Subpart YY) | July 12, 2002 | July 12, 2010 |
| 3.  Generic MACT II – Cyanide Chemicals Manufacturing, 67 Fed. Reg. 46,258 (codified at 40 C.F.R. Part 63 Subpart YY) | July 12, 2002 | July 12, 2010 |
| 4.  Generic MACT II – Spandex Production, 67 Fed. Reg. 46,258 (codified at 40 C.F.R. Part 63 Subpart YY) | July 12, 2002 | July 12, 2010 |
| 5.  Flexible Polyurethane Foam Fabrication Operations, 68 Fed. Reg. 18,062 (codified at 40 C.F.R. Part 63 Subpart MMMMM) | Apr. 14, 2003 | Apr. 14, 2011 |
| 6.  Refractory Products Manufacturing, 68 Fed. Reg. 18,730 (codified at 40 C.F.R. Part 63 Subpart SSSSS) | Apr. 16, 2003 | Apr. 16, 2011 |
| 7.  Semiconductor Manufacturing, 68 Fed. Reg. 27,913 (codified at 40 C.F.R. Part 63 Subpart BBBBB) | May 22, 2003 | May 22, 2011 |
| 8.  Primary Magnesium Refining, 68 Fed. Reg. 58,615 (codified at 40 C.F.R. Part 63, Subpart TTTTT) | Oct. 10, 2003 | Oct. 10, 2011 |
| 9.  Mercury Emissions from Mercury Cell Chlor-Alkali Plants, 68 Fed. Reg. 70,904 (codified at 40 C.F.R. Part 63 Subpart IIIII) | Dec. 19, 2003 | Dec. 19, 2011 |

2.      Due to the Defendant Administrator's failures to act, Plaintiffs Community In-

Power and Development Association Inc., Hoosier Environmental Council, Ohio Valley

Environmental Coalition, Sierra Club, and Utah Physicians for a Healthy Environment

(collectively, "Plaintiffs") seek both a determination that the Defendant Administrator's failures

to perform each action required by 42 U.S.C. § 7412(d)(6) and § 7412(f)(2) violate the Clean Air

Act, and an order to compel the Administrator to take each required action in accordance with an expeditious deadline set by this Court.

## JURISDICTION AND VENUE

3.      This action arises under the Clean Air Act, 42 U.S.C. § 7412(d)(6), (f)(2).  This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2), 28 U.S.C. § 1331, and 28 U.S.C. § 1361.  This Court may order the Administrator to perform the requisite acts and duties, may issue a declaratory judgment, and may grant further relief pursuant to 42 U.S.C. § 7604(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1361. Plaintiffs have a right to bring this action pursuant to the Clean Air Act, 42 U.S.C. § 7604(a)(2), 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

4.      By certified letters to the Administrator posted on August 23, 2013 and April 8, 2016, Plaintiffs gave notice of this action as required by 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Part 54, §§ 54.1-.3 (Dec. 9, 1971).

5.      Venue is vested in this Court under 28 U.S.C. § 1391(e) because the Defendant, EPA Administrator Gina McCarthy, resides in this district.

## PARTIES

6.      Plaintiff Community In-Power and Development Association Inc. ("CIDA") is a nonprofit organization based in Port Arthur, Texas.  CIDA brings this action on behalf of itself and its adversely affected members.  Founded in 2000, CIDA works to reduce air pollution and to promote economic development and environmental justice for community members.

7.      Plaintiff Hoosier Environmental Council ("HEC") is a nonprofit environmental advocacy organization with members across Indiana.  HEC brings this action on behalf of itself

and its members.  HEC uses a combination of education, advocacy, and litigation to work for cleaner air, safer water, more protected land, and a healthier quality of life for Indiana's citizens.

8.      Plaintiff Ohio Valley Environmental Coalition ("OVEC") is a grassroots nonprofit organization based in West Virginia.  OVEC brings this action on behalf of itself and its members and volunteers.  OVEC is dedicated to the improvement and preservation of the environment and communities through education, grassroots organizing and coalition building, leadership development, strategic litigation, and media outreach.

9.      Plaintiff Sierra Club is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in Oakland, California.  Sierra Club brings this action on behalf of itself and its members.  A national organization dedicated to the protection of public health and the environment, including clean air, Sierra Club has more than 630,000 members who reside in all 50 states and the District of Columbia.

10.     Plaintiff Utah Physicians for a Healthy Environment ("UPHE") is a public interest nonprofit organization dedicated to protecting the health and well-being of the citizens of Utah.  UPHE has a membership of about 2,500 members, about 420 of which are physicians and health care professionals.  UPHE brings this action on behalf of itself and its members.  UPHE's mission includes improving the air quality in Utah and educating people about the sources of pollution and their health consequences.

11.     Defendant Gina McCarthy is the Administrator of the EPA.  In that role she is charged with the duty to uphold the Clean Air Act and to take required regulatory actions according to the schedules established therein.

## LEGAL FRAMEWORK

12.     The Clean Air Act has the purpose "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  42 U.S.C. § 7401(b)(1).

13.     A "primary goal" of the Act is "pollution prevention."  *Id.* § 7401(c).  Congress found the Act to be necessary in part because "the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation."  *Id.* § 7401(a)(2).

14.     To accomplish its objectives, the Act prescribes a regulatory framework within which EPA is required to set technology and risk-based standards by specific deadlines to reduce emissions of hazardous air pollutants[1] and harm to health and the environment.  *Id.* § 7412.

15.     In the 1990 Clean Air Act Amendments, Congress established new requirements for EPA to control toxic air pollution.  *Id.*  By statute, Congress listed 189 hazardous air pollutants for regulation, and required EPA to list every other compound "known to cause or [that] may reasonably be anticipated to cause adverse effects to human health or adverse environmental effects."  *Id.* § 7412(b)(1), (b)(3)(B); *see also id.* § 7412(c)(6).[2]  Pursuant to the Act's requirement that EPA "identify not less than 30 hazardous air pollutants which … present the greatest threat to public health in the largest number of urban areas," *id.* § 7412(k)(3)(B)(i),

---

[1] The term "hazardous air pollutant" is defined as "any air pollutant listed pursuant to [§ 112(b)]."  42 U.S.C. § 7412(a)(6) (citing *id.* § 7412(b)).

[2] Currently, 187 hazardous air pollutants are listed for regulation.  EPA, *Technology Transfer Network – Air Toxics Web Site: Modifications to the 112(b)1 Hazardous Air Pollutants*, http://www.epa.gov/ttn/atw/pollutants/atwsmod.html (last updated Feb. 23, 2016).

EPA published an "Integrated Urban Air Toxics Strategy" that listed 33 pollutants, including

arsenic compounds, benzene, formaldehyde, mercury compounds, and nickel compounds.

National Air Toxics Program: The Integrated Urban Strategy, 64 Fed. Reg. 38,706, 38,715 tbl.1

(July 19, 1999).

16.     The Act requires EPA to list categories of major sources of hazardous air

pollutants.  42 U.S.C. § 7412(c)(1).  A "major source" is defined as "any stationary source or

group of stationary sources located within a contiguous area and under common control that

emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more

of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air

pollutants."  *Id.* § 7412(a)(1).

17.     EPA must then promulgate emission standards for each listed category or

subcategory of major sources of hazardous air pollutants.  *Id.* § 7412(d).  These standards are

often referred to as "maximum achievable control technology" or "MACT" standards.

18.     Once the Administrator has promulgated emission standards pursuant to

§ 7412(d) for a source category, "[t]he Administrator shall review, and revise as necessary

(taking into account developments in practices, processes, and control technologies), emission

standards promulgated under this section no less often than every 8 years."  *Id.* § 7412(d)(6).

This provision requires the Administrator either to promulgate revised § 7412(d) standards or to

issue a final determination not to revise the existing standards based upon a published finding

that revision is not "necessary" to ensure the emission standards satisfy § 7412(d) of the Act.  *Id.*

19.     Section 7412(f) of the Act requires further action "to protect health and

environment."  It mandates that EPA first submit a report to Congress regarding residual risk or

"the risk to public health remaining, or likely to remain" after the application of § 7412(d)

standards.  *Id.* § 7412(f)(1).  In 1999, EPA submitted a report to Congress pursuant to

§ 7412(f)(1).  *See* EPA, EPA-453/R-99-001, *Residual Risk Report to Congress* (Mar. 1999),

http://www.epa.gov/airtoxics/rrisk/risk_rep.pdf.  Congress did not act on that report's

recommendations.

20.     Congressional inaction triggered the duty of the Administrator to determine

whether to promulgate residual risk standards under §7412(f)(2) for those source categories for

which EPA had promulgated § 7412(d) standards.  42 U.S.C. § 7412(f)(2).  Section 7412(f)(2)

directs that:

> (A)     If Congress does not act on any recommendation submitted
> under paragraph (1), the Administrator shall, within 8 years after
> promulgation of standards for each category or subcategory of
> sources pursuant to [§ 7412(d)], promulgate standards for such
> category or subcategory if promulgation of such standards is
> required in order to provide an ample margin of safety to protect
> public health in accordance with this section … or to prevent,
> taking into consideration costs, energy, safety, and other relevant
> factors, an adverse environmental effect.  Emission standards
> promulgated under this subsection shall provide an ample margin
> of safety to protect public health in accordance with this section (as
> in effect before November 15, 1990) …. If standards promulgated
> pursuant to [§ 7412(d)] and applicable to a category or subcategory
> of sources emitting a pollutant (or pollutants) classified as a
> known, probable or possible human carcinogen do not reduce
> lifetime excess cancer risks to the individual most exposed to
> emissions from a source in the category or subcategory to less than
> one in one million, the Administrator shall promulgate standards
> under this subsection for such source category.
>
> …
>
> (C)     The Administrator shall determine whether or not to
> promulgate such standards and, if the Administrator decides to
> promulgate such standards, shall promulgate the standards 8 years
> after promulgation of the [§ 7412(d) standards] for each source
> category or subcategory concerned.

*Id.*  Thus, if residual risk standards are "required in order to provide an ample margin of safety to

protect public health" or "to prevent … an adverse environmental effect," then the Administrator

is directed to promulgate these standards within eight years of the promulgation of § 7412(d) standards.  *Id.* § 7412(f)(2)(A).  Under § 7412(f)(2), EPA is therefore required either to set new standards that will protect the public with an ample margin of safety or to determine that such standards are not necessary.

21.    The Act guarantees citizens a right to present their views and information to EPA and have them considered by the agency.  The Act applies § 7607(d) rulemaking requirements to "the promulgation or revision of any … emission standard or limitation under section 7412(d) of this title" and "any standard under section 7412(f) of this title," among others.  *Id.* § 7607(d)(1)(C).  Section 7607(d) requires EPA to provide public notice of proposed rulemaking accompanied by a statement of its basis and purpose, which must include the factual data on which the proposed rule is based and the methodology used in obtaining and analyzing the data. *Id.* § 7607(d)(3).  Section 7607(d) also requires EPA to allow any person to submit written comments, data, or documentary information, and to present data, views, or arguments orally. *Id.* § 7607(d)(5).  EPA must consider such comments, data, and arguments submitted, and respond to each of the significant comments, criticisms, and new data when promulgating the final rule.  *Id.* § 7607(d)(6)(B).

22.    Section 7412(d) and section 7412(f) standards become effective "upon promulgation."  *See id.* § 7412(d)(10), (f)(3); *see also id.* § 7412(f)(4) (setting compliance dates for § 7412(f) standards); *id.* § 7412(i) (setting compliance schedule for § 7412(d) standards).

## FACTS

23.    Breathing toxic air is a serious health problem in many communities across the country.  EPA has recognized that millions of Americans have an increased likelihood of developing cancer due to exposures to toxic air pollution, including at least half a million people

who face an increased cancer risk of above 100-in-1 million.  EPA, Summary of Results for the 2011 National-Scale Assessment at 4 (2015), https://www.epa.gov/sites/production/files/2015-12/documents/2011-nata-summary-results.pdf; *see also* EPA, EPA-456/R-14-001, *Nat'l Air Toxics Program, The Second Integrated Urban Air Toxics Report to Congress* at 3-1, 3-6, 3-19 to 3-20 (Aug. 2014), http://www.epa.gov/sites/production/files/2014-08/documents/082114-urban-air-toxics-report-congress.pdf.  People of color and lower-income people suffer disproportionate exposure to hazardous air pollutants and resulting harm to their health because they are more likely to live and work near sources of toxic pollution.  *See, e.g.*, Rachel Morello-Frosch *et al.*, *Understanding the Cumulative Impacts of Inequalities in Environmental Health: Implications for Policy*, 30:5 Health Affairs 879, 881 (2011) (citing studies), http://content.healthaffairs.org/content/30/5/879.full.pdf+html.

24.     EPA has listed each of the Source Categories enumerated in Paragraph 1, Table A, above, as major sources of hazardous air pollutants.  Initial List of Categories of Sources Under Section 112(c)(1) of the Clean Air Act Amendments of 1990, 57 Fed. Reg. 31,576 (July 16, 1992); National Emission Standards for Hazardous Air Pollutants; Revision of Initial List of Categories of Sources and Schedule for Standards Under Sections 112(c) and (e) of the Clean Air Act Amendments of 1990, 61 Fed. Reg. 28,197 (June 4, 1996); National Emission Standards for Hazardous Air Pollutants: Revision of Source Category List and Schedule for Standards Under Section 112 of the Clean Air Act, 64 Fed. Reg. 63,025 (Nov. 18, 1999); National Emission Standards for Hazardous Air Pollutants for Refractory Products Manufacturing, 67 Fed. Reg. 42,108, 42,109-10 (June 20, 2002); National Emission Standards for Hazardous Air Pollutants: Mercury Emissions from Mercury Cell Chlor-Alkali Plants, 67 Fed. Reg. 44,672, 44,679 (July 3, 2002).

25.     Sources in the Source Categories emit hazardous air pollutants regulated under 42

U.S.C. § 7412.  EPA has recognized that the pollutants emitted by sources in the Source

Categories include metals, such as arsenic, lead, and nickel; organic compounds, such as

benzene, dioxins, formaldehyde, and hydrogen cyanide; and inorganic acid gases, such as

hydrochloric acid, hydrogen fluoride, and chlorine.  Congress determined these pollutants are

hazardous when it listed them and required EPA to regulate sources that emit them.  42 U.S.C.

§ 7412(b)(1), (c)-(d).

26.     EPA has recognized that the hazardous air pollutants emitted by sources in the

Source Categories can cause serious acute and chronic human health effects.  Breathing some of

these pollutants can cause cancer.  EPA has recognized that carcinogens have no safe level of

human exposure.  *Natural Res. Def. Council v. EPA*, 824 F.2d 1211, 1215 (D.C. Cir. 1987)

(observing that EPA determined "that known and probable carcinogens have no safe threshold");

*see also* S. Rep. No. 101-228, at 175 (1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3560

("Federal Government health policy since the mid-1950s has been premised on the principle that

there is no safe level of exposure to a carcinogen").  Breathing some of these pollutants can also

cause other kinds of chronic, long-term harm, such as neurological harms; damage to the liver

and kidneys; respiratory disorders; depression; anorexia; and developmental and reproductive

harms, including birth defects, testicular damage, reduced fertility, impotence, maternal toxicity,

pregnancy problems, early embryonic death, and growth retardation.  In addition, breathing some

of these pollutants can cause severe or acute harm from short-term exposure.

27.     Some people face greater health harms from exposure to hazardous air pollutants

emitted from the sources in the Source Categories because they are not exposed only to one

pollutant, to one source, or through one route of exposure.  Instead, they face combined and

synergistic effects from multiple pollutants, multiple pathways of exposure, and multiple

sources, all at once.

28.     Some of the hazardous air pollutants emitted from the sources in the Source

Categories persist in the environment or bioaccumulate.

29.     For example, EPA has determined that lead is a persistent, bioaccumulative, and

toxic heavy metal that threatens the neurological development of children and can precipitate

high blood pressure, heart disease, kidney disease, and reduced fertility in adults.  Lead is likely

to cause cancer.  Lead and Lead Compounds; Lowering of Reporting Thresholds; Community

Right-to-Know Toxic Chemical Release Reporting, 66 Fed. Reg. 4500, 4501-04 (Jan. 17, 2001);

EPA, *Lead Compounds, Hazard Summary*, http://www3.epa.gov/airtoxics/hlthef/lead.html (last

updated Feb. 23, 2016); EPA, *Basic Information About Lead Air Pollution*,

https://www.epa.gov/lead-air-pollution/basic-information-about-lead-air-pollution (last updated

Mar. 30, 2016).  There is no safe level of human exposure to lead.  Nat'l Inst. of Envtl. Health

Scis., *Lead*, www.niehs.nih.gov/health/topics/agents/lead/ (last updated Feb. 4, 2016); World

Health Org., *Lead poisoning and health*, www.who.int/mediacentre/factsheets/fs379/en/ (last

updated Aug. 2015).

30.     In another example, mercury, which is emitted by sources in the Source

Categories, is deposited in water and accumulates in the aquatic food chain.  EPA, *How People

are Exposed to Mercury*, https://www.epa.gov/mercury/how-people-are-exposed-mercury (last

updated Oct. 19, 2015).  EPA has determined that pregnant women and developing fetuses and

young children are particularly vulnerable to mercury exposure.  EPA, *Health Effects of

Exposures to Mercury*, https://www.epa.gov/mercury/health-effects-exposures-mercury (last

updated May 31, 2016); National Emission Standards for Hazardous Air Pollutants from Coal-

and Oil-Fired Electric Utility Steam Generating Units and Standards of Performance for Fossil-Fuel-Fired Electric Utility, Industrial-Commercial-Institutional, and Small Industrial-Commercial-Institutional Steam Generating Units, 76 Fed. Reg. 24,976, 24,977-78 (May 3, 2011). Pollutants that persist or bioaccumulate in the environment can harm human health not only from breathing them but also when people are exposed through other routes or pathways, such as after pollutants fall on the soil and children are exposed through playing in the soil, or when people eat fish, shellfish, breast-milk, or other food in which such pollutants have accumulated. *See, e.g.*, EPA, *Basic Information about Mercury*, http://www.epa.gov/mercury/basic-information-about-mercury (last updated Oct. 19, 2015); EPA, *How People are Exposed to Mercury*. In addition, EPA has found that such pollutants can harm fish and plants. *See, e.g.*, EPA, *Basic Information about Mercury*; EPA, EPA-452/R-97-008, *Mercury Study Report to Congress*, Vol. VI at 2-26 to 2-27 (Dec. 1997), http://www.epa.gov/sites/production/files/2015-09/documents/volume6.pdf.

31.     Sources in the Source Categories also emit other types of pollutants, including particulate matter, volatile organic compounds, carbon monoxide, sulfur dioxide, and nitrogen oxides. EPA has found that volatile organic compounds and nitrogen oxides are precursors to the formation of ozone in the ambient air. EPA, *Air Emissions Sources: Basic Information*, http://www3.epa.gov/air/emissions/basic.htm (last updated Feb. 23, 2016). EPA has found that ambient ozone can cause asthma attacks, lung inflammation, reduction of lung function, respiratory symptoms (*e.g.*, cough, chest pain, throat and nose irritation), and increased lung permeability. EPA, EPA 600/R-10/076F, *Integrated Science Assessment for Ozone and Related Photochemical Oxidants* at 6-1 to 6-3 (Feb. 2013), http://ofmpub.epa.gov/eims/eimscomm.getfile?p_download_id=511347. EPA has found that

ozone can also damage vegetation including forests, commercial trees, and agricultural crops, and result in damage to ecosystems.  *See, e.g.*, *id.* at 9-3, fig.9-1.

32.     The Administrator promulgated national emission standards for hazardous air pollutants for each of the Source Categories on the dates specified in Paragraph 1, Table A (column entitled "Date Of Promulgation"), above.

33.     The Administrator was required to take final action to fulfill her 42 U.S.C. § 7412(f)(2) and § 7412(d)(6) duties for each of the Source Categories by the dates specified in Paragraph 1, Table A (column entitled "Deadline For Action Pursuant To § 7412(d)(6) And § 7412(f)(2)"), above, *i.e.*, "within 8 years after promulgation" and "no less often than every 8 years."

34.     <u>Primary Copper Smelting</u>

a.     More than eight years have passed since the Administrator promulgated emission standards under 42 U.S.C. § 7412 for Primary Copper Smelting.

b.     The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Primary Copper Smelting.

c.     The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Primary Copper Smelting.

d.     The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Primary Copper Smelting.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Primary Copper Smelting is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Primary Copper Smelting.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Primary Copper Smelting is currently effective.

35.   <u>Generic MACT II – Carbon Black Production</u>

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Generic MACT II – Carbon Black Production.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Generic MACT II – Carbon Black Production.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Generic MACT II – Carbon Black Production.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Generic MACT II – Carbon Black Production.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Generic MACT II – Carbon Black Production is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Generic MACT II – Carbon Black Production.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Generic MACT II – Carbon Black Production is currently effective.

36.     <u>Generic MACT II – Cyanide Chemicals Manufacturing</u>

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Generic MACT II – Cyanide Chemicals Manufacturing.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Generic MACT II – Cyanide Chemicals Manufacturing.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Generic MACT II – Cyanide Chemicals Manufacturing.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Generic MACT II – Cyanide Chemicals Manufacturing.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Generic MACT II – Cyanide Chemicals Manufacturing is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Generic MACT II – Cyanide Chemicals Manufacturing.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Generic MACT II – Cyanide Chemicals Manufacturing is currently effective.

37.     <u>Generic MACT II – Spandex Production</u>

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Generic MACT II – Spandex Production.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Generic MACT II – Spandex Production.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Generic MACT II – Spandex Production.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Generic MACT II – Spandex Production.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Generic MACT II – Spandex Production is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Generic MACT II – Spandex Production.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Generic MACT II – Spandex Production is currently effective.

38.     <u>Flexible Polyurethane Foam Fabrication Operations</u>

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Flexible Polyurethane Foam Fabrication Operations.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Flexible Polyurethane Foam Fabrication Operations.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement

17

of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Flexible Polyurethane Foam Fabrication Operations.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Flexible Polyurethane Foam Fabrication Operations.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Flexible Polyurethane Foam Fabrication Operations is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Flexible Polyurethane Foam Fabrication Operations.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Flexible Polyurethane Foam Fabrication Operations is currently effective.

39.      Refractory Products Manufacturing

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Refractory Products Manufacturing.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Refractory Products Manufacturing.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Refractory Products Manufacturing.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Refractory Products Manufacturing.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Refractory Products Manufacturing is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Refractory Products Manufacturing.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Refractory Products Manufacturing is currently effective.

40.     <u>Semiconductor Manufacturing</u>

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Semiconductor Manufacturing.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Semiconductor Manufacturing.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Semiconductor Manufacturing.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Semiconductor Manufacturing.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Semiconductor Manufacturing is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Semiconductor Manufacturing.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Semiconductor Manufacturing is currently effective.

41.   <u>Primary Magnesium Refining</u>

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Primary Magnesium Refining.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Primary Magnesium Refining.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Primary Magnesium Refining.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Primary Magnesium Refining.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Primary Magnesium Refining is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Primary Magnesium Refining.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Primary Magnesium Refining is currently effective.

42.   <u>Mercury Emissions from Mercury Cell Chlor-Alkali Plants</u>

a.      More than eight years have passed since the Administrator promulgated emission standards under § 7412 for Mercury Emissions from Mercury Cell Chlor-Alkali Plants.

b.      The Administrator has not completed the reviews required by § 7412(d)(6) and § 7412(f)(2) for Mercury Emissions from Mercury Cell Chlor-Alkali Plants.

c.      The Administrator has not published public notice of a proposed rule or determination, and has not accepted comments, data, or argument on a proposed rule or determination, nor has she responded to significant comments or new data, or issued a statement of basis and purpose for a final rule or determination for the reviews required by § 7412(d)(6) and § 7412(f)(2) for Mercury Emissions from Mercury Cell Chlor-Alkali Plants.

d.      The Administrator has not promulgated a final rule or determination pursuant to § 7412(f)(2) for Mercury Emissions from Mercury Cell Chlor-Alkali Plants.

e.      No rule or determination promulgated pursuant to § 7412(f)(2) for Mercury Emissions from Mercury Cell Chlor-Alkali Plants is currently effective.

f.      The Administrator has not promulgated a revised final rule or determination pursuant to § 7412(d)(6) for Mercury Emissions from Mercury Cell Chlor-Alkali Plants.

g.      No rule or determination promulgated pursuant to § 7412(d)(6) for Mercury Emissions from Mercury Cell Chlor-Alkali Plants is currently effective.

## ALLEGATIONS OF INJURY

43.     Plaintiffs and their members have been, are being, and will continue to be harmed by the Administrator's failures to take the actions required by 42 U.S.C. § 7412(d)(6) and § 7412(f)(2) for the Source Categories enumerated in Paragraph 1, Table A, above, as further explained herein.

44.     Plaintiffs' members live, work, travel, recreate, and engage in a wide variety of other activities near sources in the Source Categories.  Plaintiffs' members suffer exposure and other harm to their health, recreational, aesthetic, educational, professional, and other interests

due to breathing the hazardous air pollutants emitted by sources in the Source Categories, by consuming food contaminated with pollutants from sources in the Source Categories, and by other pathways of exposure as described in paragraphs 26-30, above.  Exposure to hazardous air pollutants emitted by sources in the Source Categories has adverse health effects which may include respiratory, neurological, developmental, and reproductive harm; damage to bodily organs and the central nervous system; and cancer, as well as other health effects described in paragraphs 26-30, above.

45.     Plaintiffs' members are concerned that hazardous air pollutants are present in the locations where they live, work, travel, recreate, and engage in other activities.  These reasonable concerns about their increased exposure from such activities and other resulting harms from such exposure diminish their enjoyment of activities and areas they previously enjoyed or would like to continue to engage in or use and thereby harm their recreational, aesthetic, educational, professional, and other interests.

46.     Further, sources in the Source Categories emit hazardous air pollutants that can damage surrounding wildlife, plants, waters, land, communities, and ecosystems, and thus also harm Plaintiffs' members' recreational, aesthetic, educational, professional, and other interests in those wildlife, plants, waters, land, communities, or ecosystems.  As detailed above, the hazardous air pollutants emitted by sources in the Source Categories include volatile organic compounds, which contribute to ambient ozone that can harm plant species and can result in changes in wildlife habitat.  These changes can lead to wildlife avoidance of certain areas, as well as a reduction in biodiversity or other changes to a local community's ecosystem. Ecosystem changes make it more difficult for Plaintiffs' members to observe, fish, cultivate, study, research, or write about wildlife, plants, or ecosystems.

47.     Plaintiffs and their members suffer additional harm because they do not have information, published findings, or determinations from the Administrator regarding the best available current pollution control methods, practices, and technologies to achieve emission reductions, the health and environmental risks that remain after application of the existing standards, or other information relevant to the need for stronger emission standards for the sources in the Source Categories.  This information would be provided to Plaintiffs, their members, and all other interested members of the public as a result of the Administrator's required actions pursuant to § 7412(d)(6) and § 7412(f)(2).  *See, e.g.*, 42 U.S.C. § 7607(d)(3)-(6) (describing notice and informational disclosures required as part of rulemakings under § 7412). If Plaintiffs and their members had this information, they would use it to work for stronger health and environmental protections; to educate members, supporters, and the public pursuant to their organizational missions; and to protect themselves and their families from hazardous air pollutants and affected land, water, and food.  The denial of this information impairs Plaintiffs' ability to provide information and services to their members to assist them in protecting their interests, hampers the ability of Plaintiffs and their members to take actions to protect their health and communities, and diminishes their enjoyment of activities in their daily life.

48.     Plaintiffs and their members suffer harm because they are denied the opportunity to submit written comments, data, and documentary information to EPA and to present data, views, or arguments to EPA and have them considered by EPA and responded to as part of the overdue § 7412(d)(6) and § 7412(f)(2) rulemakings.  The Administrator's failures to conduct the overdue rulemakings deny Plaintiffs and their members the opportunity to seek greater health protections and emissions reductions, and to have EPA consider and respond to such comments in taking the final actions required by § 7412(d)(6) and § 7412(f)(2).  Deprivation of the ability

to present comments and arguments and have them considered and addressed by EPA impairs

Plaintiffs' and their members' ability to serve and protect their interests and fulfill their

organizational missions.

49.     Plaintiffs and their members suffer harm because the Administrator has not

issued a final rule or determination under § 7412(d)(6) and § 7412(f)(2) addressing matters these

provisions require, as discussed above.  Any such rule or determination would be judicially

reviewable.  *See id.* § 7607(b); *see also id.* § 7607(d).  Deprivation of the right to judicial review

harms the ability of Plaintiffs and their members to protect their interests and fulfill their

organizational missions.

50.     The Administrator's failures to take actions required by § 7412(d)(6) and

§ 7412(f)(2) deprive Plaintiffs' members of the cleaner air that would result from those actions.

Consequently, Defendant prolongs and increases Plaintiffs' members' exposure to hazardous air

pollutants and the related and resulting health, recreational, aesthetic, and other injuries as

described above.  Defendant also prolongs and increases the hazardous air pollutant exposure of

wildlife, plant, water, land, local communities, and ecosystems, resulting in harm to Plaintiffs'

members' interests, as described above.  Emission reductions required under § 7412(d)(6) and

§ 7412(f)(2) would reduce these exposures, and would reduce the related health, recreational,

aesthetic, and other harms suffered by Plaintiffs' members.

51.     By not taking the actions required by § 7412(d)(6) and § 7412(f)(2), the

Administrator deprives Plaintiffs and their members of information, published findings, and

determinations, as described above.  *See, e.g.*, *id.* § 7607(d)(3)-(6).  In addition, the

Administrator's failures to take the actions required by § 7412(d)(6) and § 7412(f)(2) deprive

Plaintiffs and their members of the opportunity to receive judicial review of the lawfulness of the

final EPA actions.  *See id.* § 7607(b).  These failures make it more difficult for Plaintiffs and

their members to seek health and environmental protections from hazardous air pollutants; to

shield themselves, their families, and other community members from exposure to such

pollutants; to protect their health, recreational, aesthetic, and other interests; and to be able to

enjoy activities in their daily life without concerns about exposure to hazardous air pollutants.

These failures also impair Plaintiffs' abilities to provide educational services to their members

concerning hazardous air pollution from the sources in the Source Categories and hinder

Plaintiffs' ability to provide services and take actions vital to fulfilling their public health

missions.

52.     For all of the foregoing reasons, the failures complained of herein cause Plaintiffs

and their members injuries for which they have no adequate remedy at law.  Granting the

requested relief would redress these injuries.

## CLAIMS FOR RELIEF

53.     The allegations of all foregoing paragraphs are hereby incorporated as if set forth

fully herein.

### Violations of § 7412(d)(6) of the Clean Air Act

54.     Each of the Administrator's ongoing failures to review and either revise or issue a

revision determination regarding the emission standards for each of the 9 Source Categories

enumerated in Paragraph 1, Table A, above, in accordance with 42 U.S.C. § 7412(d)(6),

constitutes a "failure of the Administrator to perform any act or duty under this chapter which is

not discretionary" within the meaning of § 7604(a)(2) of the Clean Air Act for each such source

category.

55.    Each day the Administrator fails to take these legally required actions, Defendant commits new, additional, and ongoing violations of its duties under § 7412(d)(6).

Violations of § 7412(f)(2) of the Clean Air Act

56.    Each of the Administrator's ongoing failures either to promulgate § 7412(f)(2) residual risk standards or to issue a final determination not to promulgate such standards for each of the 9 Source Categories enumerated in Paragraph 1, Table A, above, constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of § 7604(a)(2) of the Clean Air Act for each such source category.

57.    Each day the Administrator fails to take these legally required actions, Defendant commits new, additional, and ongoing violations of its duties under § 7412(f)(2).

**PRAYER FOR RELIEF**

58.    WHEREFORE, Plaintiffs respectfully request, for each of the Source Categories enumerated in Paragraph 1, Table A, above, that the Court:

(1)    Declare that each of the Defendant Administrator's failures to review and either revise standards promulgated under § 7412(d) or issue a final determination that such revision is not necessary for each of the Source Categories pursuant to § 7412(d)(6) within eight years, constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of § 7604(a)(2);

(2)    Order the Defendant Administrator to review and either to revise the emission standards or to issue a final determination that such revision is not necessary for each of the Source Categories pursuant to § 7412(d)(6) in accordance with an expeditious deadline specified by this Court;

(3)     Declare that each of the Defendant Administrator's failures either to promulgate § 7412(f)(2) standards or to issue a final determination that such standards are not required for each of the Source Categories constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of § 7604(a)(2);

(4)     Order the Defendant Administrator either to promulgate § 7412(f)(2) standards or to issue a final determination that such standards are not required for each of the Source Categories pursuant to § 7412(f)(2) in accordance with an expeditious deadline specified by this Court;

(5)     Retain jurisdiction to ensure compliance with this Court's decree;

(6)     Award Plaintiffs the costs of this action, including attorney's fees; and,

(7)     Grant such other relief as the Court deems just and proper.


DATED:       June 8, 2016                    Respectfully Submitted,

                                             /s/ Nicholas Morales
                                             Nicholas Morales (D.C. Bar No. 1003942)
                                             Emma C. Cheuse (D.C. Bar No. 488201)
                                             James S. Pew (D.C. Bar No. 448830)
                                             Earthjustice
                                             1625 Massachusetts Ave., NW, Suite 702
                                             Washington, DC 20036
                                             nmorales@earthjustice.org
                                             echeuse@earthjustice.org
                                             jpew@earthjustice.org
                                             Tel: 202-667-4500
                                             Fax: 202-667-2356

                                             *Attorneys for Plaintiffs*